GRANT BARNGROVER, Respondent, v. HENRY MAACK, Appellant.

St. Louis Court of Appeals, October 27, 1891.

1. **Professional Services : TEACHERS : IMPLIED CONTRACT.** It is a rule applicable to every learned profession, and, therefore, to that of teaching, that he, who is engaged in the practice of it and is employed to render services appertaining to it, undertakes, in the absence of a special contract, to exercise a reasonable degree of skill and judgment and ordinary care and diligence in the rendition of such services.

Barngrover v. Maack.

2. —— : —— : EXTENT OF IMPLIED OBLIGATION. This being the
extent of the implied obligation, one who contracts to give instruc-
tion in specified studies does not warrant that he will pursue the
best methods of study.

3. —— : —— : SCHOOLROOM ACCOMMODATIONS. But a teacher, who
undertakes to furnish schoolroom accommodations, impliedly
contracts that those furnished will be reasonably fit for the pur-
poses for which they are intended.

4. —— : —— : PROSPECTUS. The proprietor of a private school
published a prospectus, in which he stated that the entire tuition
would consist of three terms, and set forth the branches of study
to be pursued during the first term of his school, and the course
and extent of study and the number of lessons per week in each
branch. *Held,* that he thereby undertook to instruct his pupils in
each of the branches thus enumerated, but that the amount of
instruction in each was, within reasonable limits, taking into con-
sideration the time allotted for the entire course, left to his own
judgment.

5. Practice, Appellate: ADMISSION OF IRRELEVANT EVIDENCE : PREJU-
DICIAL ERROR. The admission of irrelevant evidence is not neces-
sarily prejudicial error ; whether it is so depends, to a great extent,
upon the probability of its having brought about or affected the
finding. And *held,* that the admission of such evidence necessi-
tated a reversal of the judgment in the cause at bar, which was
one for breach of contract, since it tended strongly to show
that an accurate view had not been taken by the trial court of the
obligations of the contract alleged to have been violated.

6. Damages : SUFFICIENCY OF EVIDENCE. Where damages resulting
from the breach of a contract are capable of being estimated by a
strict money standard, it is incumbent upon the party claiming
them to give evidence of the amount of his damages in dollars and
cents ; otherwise, his recovery will be confined to nominal damages.
But this is not requisite, where his damages are incapable of being
reduced to an exact money standard.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Benj. J. Klene,* for appellant.

*C. L. Mott,* for respondent.

ROMBAUER, P. J.—While this cause involves a
small amount, the judgment for plaintiff being for but

$10, it does involve several legal propositions which are important. The action was instituted before a justice. The plaintiff in his statement claims that the defendant, who is principal of an academy of architecture and building, agreed to instruct him at such academy in certain branches of learning (reciting them), and wholly failed to keep his said promise. There was no evidence of a total failure, but it is claimed that there was evidence of a partial failure, and, as a point is made by the defendant on this variance, we deem it proper to say that, under the liberal rules applicable to statements filed before justices, we do not deem this variance, if there is one, as furnishing just ground of complaint. The only errors assigned worthy of serious consideration are the want of substantial evidence to support the judgment, the admission of irrelevant evidence for plaintiff, and the want of evidence to support any judgment for a definite amount of substantial damages.

The primary question to be determined is the nature of plaintiff's contract. It was decided in *Leighton v. Sargeant*, 27 N. H. 260, a case wherein the opinion is well reasoned, that on principle there can be no difference between contracts governing the various professional services. We adopt the substance of the rule stated in that case as applicable to all professional services, namely, that one who enters into a learned profession undertakes to bring to the exercise of it a reasonable degree of care and skill, and ordinary good judgment; and engages to use reasonable and ordinary care and diligence in the execution of his skill and the application of his knowledge to accomplish the purpose for which he is employed. In absence of a special undertaking, the rule thus stated is the only just and safe one in defining the obligations assumed by members of a learned profession to parties contracting for their professional services. In case of a teacher, who engages to furnish schoolroom accommodations, the additional duty is necessarily implied that the accommodations

thus furnished shall be reasonably fit for the purposes intended.

In the case at bar a special undertaking to some extent is claimed, by reason of a prospectus published by the defendant, which set forth the advantages of his academy, and stated, among other things, that the entire tuition consisted of three terms, and which set out the course of study for the first term as follows :

" COURSE OF STUDY—FIRST TERM."

" *Weekly Lessons.*

*Arithmetic.*—Review of fundamental rules, decimals and common fractions ; business arithmetic and algebra as far as equations.......................................................... 6

*Plane Geometry.*—Definitions, plane figures ( including circles ), relation of parts.............................................. 4

*Geometrical Drawing.*—Instrumental drawing, laws of projections, isometry................................................. 8

*Physics.*—General review of the properties of matter, forces of nature........................................................ 2

*Architecture.*—Elements of building, constructions and architectural drawing................................................. 10

*Architectural Forms.*—Moldings and cornices in profile ; lettering............................................................ 4

*Freehand Drawing* from copies of simple ornaments. Special stress will be placed upon pure and elegant outlines...... 6

*English Literature.*—Grammar, composition, including business letters, dictations and short descriptions of building constructions...................................................... 4

" Total.................................................44.

The plaintiff contracted on the faith of this prospectus, and entered for the first term, paying $40 ; but, being dissatisfied with the school, he severed his connection with it before the expiration of the term. While we do not hold that by the publication of the prospectus the defendant assumed a literal compliance with its terms unto minute subdivisions of the studies set out in the course of study, we do hold that he did assume to give instruction to the plaintiff in each of the various studies enumerated, but that the amount of instruction in each, within reasonable limits, was to be left to his

own judgment, taking into consideration the time allotted for the entire course.

Assuming the character of the teacher's contract to be as above stated, the first inquiry which arises is, whether there was any substantial evidence of its breach. Such evidence is claimed in the following particulars: *First.* That the schoolroom was overcrowded. *Second.* That the defendant was not sufficiently familiar with the English language to explain English technical terms to the students, so as to be readily comprehended. *Third.* That he failed to give sufficient and accurate instruction on two subjects, the American bond in bricklaying, and the proper method of joining a tenon and mortise.

On the first point there was evidence tending to show that sixteen persons, including the teacher, were confined in a room of fourteen feet by sixteen feet by ten feet, which would allow only one hundred and forty cubic feet for air and respiration to each individual, and the defendant himself testified that the proper allowance is not less than one hundred and sixty cubic feet. The plaintiff's evidence, however, as to size of room and number of pupils was contradicted by the defendant. There was also evidence on the second point, although the testimony of the defendant himself, as a witness on his own behalf, is embodied literally in the record, and shows a reasonable familiarity with the English language and its technical terms. On the last point there was no substantial evidence, as it is not shown that such a thing as a distinctly American bond in bricklaying is technically known, nor that the method in vogue here of fastening a tenon in the mortise is preferable to the method taught by the teacher. Nor would such facts, if shown, tend to show a breach of the contract, because the teacher's contract, as above seen, was not a warranty to teach the very best methods, but only that he possessed a reasonable degree of skill and care to teach the subjects under consideration. In

view of the fact that, in determining whether there was any evidence to take the case to the jury, we are bound to give to the plaintiff's evidence its greatest effect, we must conclude that there was substantial evidence of a breach of the contract, and hence that the defendant's motion to withdraw the case from the jury was properly denied.

The mere admission of irrelevant evidence is not necessarily prejudicial error. Whether it is such or not must, to a great extent, depend in every case upon the further question of the probability of its having brought about or affected the finding. If, in this case, the breaches of the contract were made out by clear and uncontroverted evidence, the mere fact that irrelevant evidence was given, tending to show other breaches, would not furnish ground for reversal. It is claimed by the defendant that, irrelevant evidence was admitted against his objection on the following points: Whether certain subdivisions of the studies mentioned in the course of studies were taught; whether the teacher had other classes, it not appearing that the teaching of such classes consumed any of the time to which the plaintiff's class was entitled; and whether any student ever graduated from the defendant's academy. We must hold that neither of these questions had any tendency to show a breach of the contract on the defendant's part, as above defined, and that, under the state of the rest of the evidence, the admission of such evidence was prejudicial. It was evidence which was uncontradicted, and its admission against the defendant's objection has a strong tendency to show that the court did not take an accurate legal view of the obligations assumed by the defendant. This error necessitates a reversal of the judgment.

In view of a possible retrial of the case, we deem it proper to say that the defendant's third complaint is untenable. Where damages resulting from the breach

of a contract are capable of being estimated by a strict money standard, it is incumbent upon the plaintiff to give evidence of his damages in dollars and cents; otherwise, his recovery will be confined to nominal damages. This, however, is never the case where his damages are incapable of being reduced to an exact money standard.

We have given more time to the investigation of this case than the slight amount involved seems to demand, because in some respects it is a case of first impression. A proper administration of justice demands that, while on the one hand courts should be careful to throw a proper safeguard around the student, so as to protect him from imposture, they should, on the other, protect the teacher in his contract, and not prevent him from earning a livelihood by the exercise of his profession, so long as he brings to its exercise that reasonable care, skill and diligence, which, in the absence of a special contract, is all that the law demands of him.

All the judges concurring, the judgment is reversed and the cause remanded.