No. 19,189.

PHILIP SEALE, ET AL. *v.* JOHN D. BATES
AS BATES DANCE STUDIO, ET AL.
(359 P. [2d] 356)

Decided February 14, 1961.

Mr. GEORGE J. DUCKWORTH, Mr. H. WILLIAM HUSEBY, for plaintiffs in error.

Mr. FRANK A. BRUNO, for defendant in error John D. Bates.

Messrs. EDISON AND BERMAN, for defendant in error Dance Studio of Denver, Inc.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFFS in error will be referred to by name or as they were designated in the trial court where they were plaintiffs in an action against John Bates, individually, the Bates Dance Studio, Inc., and the Dance Studio of Denver, Inc. The Seales sought to recover $2,040.00 which had been paid to the Bates Dance Studio to defray the cost of 300 hours of dance instruction. The plaintiff Hanscome sought to recover $4,131.34 which he had paid to the Bates Dance Studio for 612 hours of dance instruction. From their complaints it would appear that the contracts which the plaintiffs entered into with the Bates Dance Studio had been assigned to the

Dance Studio of Denver, doing business as Dale Dance Studio. It is alleged that the defendants refused to carry out their obligations and duties under the said contracts.

The Seales started taking dance lessons at the Dale Dance Studios in June of 1956. They signed up for a series of lessons costing in excess of $200.00, but in a short time they became dissatisfied with the arrangement and had the contract cancelled upon the basis that they would be allowed to take the balance of their lessons at the Bates Studio. After completion of this first series they entered into a new contract with the Bates Dance Studio whereby they undertook to take a total of 600 one-half hour lessons. These lessons were interrupted due to illness in the family and upon the Seales' resuming classes they were told that the remainder of the lessons would be given at the Dale Studio. They then went to the Dale Studio to discuss the situation and were there advised by one of the former Bates employees, who was then working for Dale, that the latter had assumed the obligations of the Bates contracts. The Seales were told that the "students and the instructors, the entire organization was transferred to the Dale Studios; that we would have the same instructors, the same instruction, a continuation of what we had had at Bates." They proceeded to take lessons at Dale, but after some 30 one-half hours of instruction they became dissatisfied with the conditions. This dissatisfaction arose from the fact that the room was much smaller and more crowded and the music from another room interfered with the lessons. Each of the Seales did not have his or her own instructor, Mr. Seale being required to take his lessons from a male instructor; there were difficulties in getting appointments and on some occasions when appointments were made an instructor would not be available. Mr. and Mrs. Seale complained to the management of the Dale Studio, but the conditions did not improve. After two or three lessons at Dale, Mr. Seale had demanded that he have a former instructor, Miss Valie, and though

he was assured that he could and although he made repeated requests, Miss Valie was never available to him. As a result of this dissatisfaction, Mr. and Mrs. Seale stopped taking lessons in May of 1957. The following August they complained to Mr. John Bates of the Bates Studio and demanded that he refund their money or make proper arrangements for completing their contract. Bates informed them that his school was then closed and that there was no money to reimburse them. Later, in August of 1957, Mr. Bates attended a meeting of 13 or 14 of his former pupils for the purpose of discussing the problems which had arisen as a result of the assignment of the contracts. He then assured the persons in attendance that he would speak to the manager of the Dale Studio and he did so. At the trial, in answer to a question as to why he continued to take lessons at the Dale Studios, Seale explained "I kept hoping that somebody would get the thing arranged to where we could continue as had been promised."

The grievances of the plaintiff Hanscome are similar to those of the Seales. At the time of the changeover they had completed 148 hours, or approximately half of the number which had been contracted and paid. In March of 1957 the manager of the Bates Studio called Seale and told him that the remainder of his lessons were to be given by the Dale Studios. No reason was given for this change. The caller explained, however, that the two studios were combined. After the transfer, Hanscome, like the Seales, continued with Dale and took some 12 or 13 hours of lessons.

John Bates testified that he spoke to the Seales and to Hanscome in March of 1957 and explained that "in order to protect their lessons that I would have to make arrangements to have them taught somewhere else, and that I was negotiating with Dale Dance Studio to teach their lessons. And they didn't object to it at that time."

The complaints alleged the contracts, alleged the assignment to Dale Dance Studio, and further alleged that

the plaintiffs are third party beneficiaries under the contract of assignment. They further alleged that the defendants have refused to carry out their obligations and duties under the contract and demand is for the full amount paid pursuant to each of the contracts. In the answers, the contract of assignment between Bates and Dale was set forth. It requires Dale to complete all pending contracts. Under the terms of this agreement Dale acquired all outstanding accounts and was entitled to collect amounts as the same became due. As to those contracts which had been fully paid, Dale agreed to perform them. Thus it was, under the terms of this agreement, that Bates was allowed to retain the monies paid by the plaintiffs and Dale was required to fulfill the terms of these agreements in consideration of other benefits provided in the contracts.

The cause was tried to the court and at the close of plaintiffs' testimony, which included cross examination of Bates, the court dismissed the plaintiffs' claims and entered informal findings and conclusions, giving these reasons:

The complaint against Bates was dismissed on the ground that the Bates Dance Studio, Inc., a corporation, was the contracting party. The basis for dispositions as to the Bates and Dale Studios was the assent of the plaintiffs to the assumption by Dale of the obligations under the contracts; that this acceptance of Dale was apparent from the plaintiffs' conduct. The court further found that neither Dale nor Bates had defaulted; that the contract did not require that a certain instructor be furnished or that instruction be given at appointed times. It was also pointed out that there was no evidence of refusal on the part of the defendants to give the number of lessons guaranteed by the contract. The court rejected plaintiffs' theory that the plaintiffs consented to the assignment on any kind of conditional basis and that essentially dissatisfaction did not arise from the assign-

ment but rather arose in connection with the terms of performance.

In seeking reversal, plaintiffs assert that the trial court erred in:

1. Failing to hold the defendant Bates responsible individually for transfer of this contract. They argue that Bates acted in such a way as to be now estopped to deny that the obligations under the contract were his own.

2. In failing to hold that the duties under these contracts were personal, therefore non-assignable.

3. In refusing to permit plaintiffs to explain ambiguities in the contract such as the "Ruby Standard" and "private lessons."

4. In improperly restricting the scope of cross examination.

It is to be noted that the contract between Bates and the Seales was on a form which called for the payment of the total amount here involved and it is acknowledged that the lessons were being given at a reduced rate. Hanscome's contract is similar with a difference in the number of lessons and the total purchase price. A supplemental written contract agreed to teach the Seales to a standard of perfection known as the "Ruby Standard" and undertook to teach them for additional hours if necessary in order to reach this standard.

A further stipulation of the form contract signed by both the plaintiffs is relevant. It provides:

"I fully understand that THIS AGREEMENT CANNOT BE CANCELLED, that my failure to take the lessons contracted for shall not relieve me of my obligations hereunder; and that any delay on your part in proceeding against me after any default by me shall not be deemed a waiver of any of your rights. This agreement expresses our entire understanding and agreement, and neither you nor I shall be bound by any statements, representations or understandings not stated and set forth herein."

1. In view of our conclusion that the judgment be af-

firmed, it is unnecessary to determine whether Bates should have been held responsible personally. In passing, however, we note that the plaintiffs' contracts were with the corporation and not with Bates and Bates' personal undertaking to the Bank of Denver could not subject him to liability to the plaintiffs.

■ 2. The argument of plaintiffs that this was a personal service contract and therefore non-assignable without their consent is valid. *Arkansas Valley Smelting Co. v. Belden Mining Co.*, 127 U.S. 379, 8 S. Ct. 1308, 32 L. Ed. 246. This assignment did not result in release of the assignor. 4 Corbin, *Contracts*, 476 (1951). 1 Restatement, *Contracts*, §160 (4) (1932). This, however, does not furnish a reason for holding that plaintiffs are now entitled to recover. On the contrary, there *is* evidence to support the trial court's finding and conclusion that the plaintiffs accepted the assignment as such; they did not elect to rescind when it was brought to their attention that the contracts had been assigned to Dale Dance Studio. The undisputed evidence shows that they accepted the assignment and proceeded to take lessons from the Dale Dance Studio. This conduct is inconsistent with plaintiffs' present theory that they at all times objected to the assignment. Had they refused to receive instruction from Dale and had they taken the position that their contract was with Bates and no other, there would be substance to their present contention that this violation justified the rescission.

■ 3. We turn now to the question of whether the matters of complaint appearing in the evidence were sufficiently substantial to justify rescission. It is to be noted that none of these matters are specifically treated in the contract. In other words, there are no stipulations relative to the size of the ballroom or the number of people participating, or that the instruction will always be given by one of the opposite sex. While we sympathize with Mr. Seale's preference for Miss Valie over Mr. Ritchie, we do not consider this a breach of a

promise implicit in the contract. Apparently Mr. Ritchie was assigned to Mr. and Mrs. Seale. It is probable that Mrs. Seale preferred to be taught by Mr. Ritchie. It thus appears to us that the proper remedy for this problem is an express stipulation in the contract requiring a partner of the opposite sex.

We are called upon to determine whether from the nature of this instruction contract we must imply stipulations of the kind which plaintiffs say existed and were violated. Considered in this context, we conclude that the plaintiffs cannot succeed. *First,* the warranties which the plaintiffs would have us read into the contracts do not arise by necessary implication. *Secondly,* these breaches cannot be regarded as sufficiently substantial to justify the remedy of rescission. *Thirdly,* there is a failure of proof with respect to the essential element set forth in the complaint, namely, a refusal on the part of the Dale Dance Studio to furnish lessons. All of the evidence supports the finding that Dale was willing to continue the lessons.

The above factors and considerations must be weighed in the light of the express stipulation in the contract that it is non-cancellable and that the monies cannot be returned. Its presence in the contract is entitled to some weight against the contentions of plaintiffs that implied provisions of the contract have been violated. In the light of such a stipulation, the plaintiffs cannot raise the inconsequential variations in the course of instruction as a ground for rescission. Stipulations of the contract will not be implied unless the surrounding circumstances require it.

The *Restatement of the Law of Contracts,* sec. 348, recognizes that restitution (or rescission) is available as a remedy in circumstances where the plaintiff has not obtained that for which he bargained. This provides:

"Restitution is available as a remedy, with respect to a performance by the plaintiff, only if it is a performance which the defendant has bargained for and received, or

if not bargained for, is one from which he has in fact received a benefit."

Illustration No. 6 under this section furnishes a comparative example which tends to show that the instant complaints are insufficient. This reads:

"A enters his son in B's private school, paying a year's tuition in advance. Later, the son is wrongfully expelled from school by B. A can get judgment for the restitution of the amount paid as tuition, less the value of the instruction and services already received by the son. In this action for restitution, A cannot get judgment for the expenses of his son in going to and from the school or for any other expenditures not received by the defendant."

The case of *Barngrover v. Maack,* 46 Mo. App. 407, further illustrates the workings of the applicable principle. There the proprietor of a school undertook in his prospectus to teach specific branches of study by thus advertising. It was held that he had undertaken to teach in the listed areas and it was also held that there was an inability to speak English and thus be able to communicate with the students. It was concluded that there was sufficient evidence to justify submission of the case to the jury. See also *Kentucky Military Institute v. Cohen,* 131 Ark. 121, 198 S.W. 874. There it was held that mistreatment of a student justified his withdrawal from the school. Restitution plus incidental damages were there held to be recoverable. Here again the case illustrates that breach of an implied stipulation must involve an important or substantial part of the performance. Cf. *Timmerman v. Stanley,* 123 Ga. 850, 51 S.E. 76, wherein the school abandoned the contract and ceased the teaching after payment had been made. Cf. also 5 *Williston on Contracts* 4069, sec. 1457.

■ It follows that the only substantial breach of the contract apparent from a careful reading of the record here is the assignment to the Dale Dance Studio. Had plaintiffs refused to accept this, there would have been a remedy by rescission or perhaps in breach of contract

and they could have recovered at least the unused portion of the consideration. Accordingly the trial court's finding and conclusion that the plaintiffs waived any rights which may have arisen from the assignment must be upheld. Plaintiffs' conduct in accepting the transfer to Dale was in effect a waiver of this breach, and the evidence does not undisputably show that the consent thereto was in any way conditional.

4. Other alleged errors, based upon the refusal of the trial court to allow plaintiffs to cross examine adverse parties, could not affect the outcome and consequently do not demand comment.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DAY did not participate.