Billy V. BEWLEY, Appellant,

v.

Robert C. MILLER, Appellee.

No. 9040.

District of Columbia Court of Appeals.

Submitted April 23, 1975.

Decided June 23, 1975.

---

Allan G. Slan, Washington, D. C., was on the brief for appellant.

No appearance was entered for appellee.

Before FICKLING, GALLAGHER, and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant, a duly licensed Fred Astaire Dance Studio franchisee in the District of Columbia, sued appellee on a contract for the Studio's services. The trial court, sua sponte, raised the issue of whether appellant, as the assignee of the prior franchisee with whom appellee originally had dealt, was precluded from suing on the contract by what arguably might be considered to be a nonassignability clause. Appellee's oral motion to dismiss on this ground was granted. Appellant then filed an application for allowance of appeal, which we granted. We reverse.

Appellee entered into a standard "Student Enrollment Agreement" in March of 1973 with the Studio. It was signed on behalf of the Studio by James Hash, who then was the Studio's licensee and operator. The contract called for 200 hours of dancing lessons, to be taken within one year of the signing of the agreement, at a cost of $1,430.00. Of that total, $1,100 was to be paid in 11 equal monthly installments. The contract included the following two clauses:

> I further understand that, under the terms of this agreement, the studio obligates itself to furnish me with a qualified instructor and facilities for taking the lessons . . . .

>   .    .    .    .    .    .

> I understand that this agreement is made solely between myself and the licensee who is an independent contractor, doing business under the trade name of "FRED ASTAIRE DANCE STUDIO", and that the licensee is not authorized to act on behalf of Fred Astaire or any other person or corporation. According-

ly, I understand and acknowledge that neither Fred Astaire nor any person or corporation other than the licensee and myself shall be bound by this agreement.

During the performance of the contract, in August of 1973 Hash sold his license to operate the Studio to appellant. As an integral part of the sale of the business, Hash assigned to appellant all pending contracts for instruction, including that at issue here. As the new licensee, appellant carried on with the furnishing of lessons to appellee. In turn, appellee accepted them without objection to the change, and continued making payments pursuant to the contract until December of 1973. He then stopped making payments.

The one-year period within which appellee obligated himself to complete his 200 hours of lessons expired March 30, 1974, when the final monthly installment was due. Appellee had completed 180½ hours of instruction. Appellant, as assignee of the claim for money due Hash from appellee, filed suit in the Small Claims and Conciliation Branch claiming an unpaid contract balance of $600. At trial, appellee's motion to dismiss was granted on the ground that the "agreement says it's only Mr. Hash and Mr. Miller to be bound by the terms of this agreement. And [appellant is] suing on this contract."

■ We see nothing in the relevant contractual clause, considering it either separately or as an integral part of the entire agreement, to preclude assignability by Hash of the debt owed to him. The provision states merely that no party other than the licensee and the student "shall be bound by this agreement." The trial court apparently believed that this phrase is the equivalent of saying that any assignment of a claim due under the contract would void the entire agreement. We disagree.

■ Clauses purporting to restrict the power to assign an otherwise assignable contract are ineffective unless the restriction is phrased in express, precise language. *See, e. g., Charles L. Bowman & Co. v. Erwin,* 468 F.2d 1293, 1297–98 (5th Cir. 1972); *Huber v. Mullan,* 246 F.Supp. 8, 19 (D.Md.1964), *aff'd,* 350 F.2d 872 (4th Cir. 1965). The language of this contract is not of the definite character required to interpret it as precluding the assignment of the claim for money. Further, there is no contention, nor do we perceive any basis for one, that appellee's obligation to pay a sum certain under the agreement is in any way nonassignable. *See generally* J. Calamari & J. Perillo, Contracts §§ 260–63 (1970).[1]

■ It might be argued that appellee is not liable to appellant because the assignor's obligation to provide appellee with dancing lessons was a personal one to the assignor and, therefore, nondelegable. *See, e. g.,* Restatement (Second) of Contracts §§ 150(2), 151(2); J. Calamari & J. Perillo, Contracts, *supra* § 278. We have considered this aspect of the case carefully since no appearance was entered on behalf of appellee. We conclude that such a contention would be invalid for two reasons. First, the agreement itself states that "the studio obligates itself to furnish me with a qualified instructor and facilities for taking lessons". To interpret that language as a promise of personal performance on the part of the assignor would be untenable. Perhaps more importantly, even if that clause could be read out of the contract completely, the fact remains that appellee accepted performance by the assignor's successor without protest. The transfer of the business occurred in August of 1973; appellee continued with his lessons and continued making payments until that December without objecting to the change in ownership. Such acceptance, without any reservation (implicit or explicit) of

---

1. If the assignment of this contract to appellant had not been made in the context of the sale of the business out of which it arose, it would have been freely assignable in spite of

any contractual provision to the contrary. D.C.Code 1973, §§ 28:9–102(1)(b), 28:9–104(f), and 28:9–318(4).

rights against the assignor, and without any demurrer to the substitute performance, would constitute a waiver of any claim of nondelegability of the original obligor's duty. *See Seale v. Bates*, 145 Colo. 430, 359 P.2d 356, 359 (1961); *cf. General Electric Credit Corp. v. Security Bank*, D. C.App., 244 A.2d 920, 923–24, 925 (1968). Additionally, appellee's unqualified receipt of appellant's services indicates that he did not intend the alleged nonassignability clause to preclude any assignment or delegation by the original licensee.

Finally, a practical consideration exists which also leads us to our result. Assignments of accounts receivable, as integral and necessary elements of the sale of a going business, are common commercial occurrences. This being true, we are not prepared to assume, in the absence of any evidence to the contrary, that appellant willingly would contract away its ability to assign its contracts of instruction (although the language involved is less than a model of precision).

Accordingly, we reverse the judgment appealed from, and remand the case to the trial court for further proceedings.[2]

*Reversed and remanded.*

2. It appears that the oral motion to dismiss was made and granted at the conclusion of the presentation of the plaintiff's evidence.