[CHANCERY.]

## Scott and Others, Appellants, *against* SHREEVE and Others. Respondents.

Relief in equity against a judgment at law, upon certain bonds given for the indemnity of the obligee, as endorser of notes drawn by the obligor, the consideration having failed.

The assignee of such bonds takes them subject to all equities existing between the original parties.

THIS cause was argued by Mr. *Swann*, for the appellants, *Jan. 13th.* and by Mr. *Taylor*, for the respondents.

Mr. Justice THOMPSON delivered the opinion of the *Jan. 20th.* Court.

This case comes up by appeal from the Circuit Court of the District of Columbia for the county of Alexandria. The object of the bill filed in the Court below, was to obtain relief against a judgment at law recovered against Shreeve, the appellee, upon certain bonds given by him to Elisha Janney, and which bonds had been assigned to the appellant, Scott, as his trustee, for the benefit of his creditors.

In the progress of the cause, it was deemed necessary by the Court, that the Bank of Potomack should be made a party defendant. A supplemental bill for that purpose was accordingly filed, and the bank made a party.

The first inquiry that seems naturally to arise is, how the case stood as between Shreeve and Janney, the original parties to the bonds. The material facts upon which the complainant in the Court below relied for relief, are not denied by the answer of Scott. From the bill and answer, and exhibits in the cause, accompanied by a written agreement between the solicitors of the parties, before the cause was set down for argument, the leading facts in the case appear to be, that some time in the year 1808, Shreeve failed in business, being indebted to the Bank of Potomack in the sum of 6,300 dollars, upon a note discounted at the bank,

1827.

Scott
v.
Shreeve.

and upon which Janney was the endorser ; for whose secu-rity Shreeve transferred to him, and John Roberts, who was also his endorser upon other notes, certain property at a va-luation, but which, upon settlement of accounts between them, fell short of Janney's responsibility to the bank upon his endorsement, 1.980 dollars 88 cents ; for which, by agreement between the parties, Shreeve gave to Janney five bonds, payable in five annual instalments, and Janney was to pay the note to the bank, upon which he was the endor-ser. The note, however, was continued running in the bank in its original form, Janney appearing responsible as endorser only. This note was renewed from time to time until the 19th of May, 1809, when, by the payments which had been made by Janney out of the property assigned by Shreeve, it was reduced to the sum of 3,306 dollars ; and Janney himself having failed about this time, no further payments were made upon this note until the month of June, 1818. when Shreeve, after a long absence, returned to Alexandria, and was called upon by the bank for pay-ment of his note, upon which he paid the sum of 3,355 dollars 29 cents, being the amount of principal and interest due upon the five bonds which he had given to Janney.

Upon this brief statement of the facts as between Shreeve and Janney, it will be seen, that Shreeve was exposed to a double responsibility for the same debt. He was liable on his note held by the bank, (unless the bank may be consider-ed as having assented to the arrangement, and accepted Janney as solely responsible on the note, which will be hereafter considered,) and he was also liable to Janney on the bonds which he had given him. For the purpose of in-demnifying Shreeve against his responsibility to the bank, Janney gave him the instrument bearing date the 1st of March, 1809, acknowledging that Shreeve had satisfied him by his bonds of the 28th of February, 1809, for all demands against him as security at bank, and for all other accounts ; and that the note above referred to, although originally dis-counted for the use of Shreeve, was continued in his name, but for the convenience of him, Janney, and engaging to save Shreeve harmless from the said note, and in due time to take it up.

An objection is here made to sustaining this bill in equity, because there was a complete and adequate remedy at law. But this objection cannot be sustained. The bonds given by Shreeve to Janney were simply for the payment of money, and although the consideration for which they were given had failed by Janney's neglect to pay up the note in the Bank of Potomack according to his engagement, this could not have been set up at law as a defence in the suit upon the bonds; nor could he, in that suit, have set off the amount paid to the bank upon his note. The engagement of Janney, on assuming the payment of the note to the bank, was a contract of indemnity only, and rested in damages, and could never form the subject of a set-off at law; and although an action at law might be maintained against Janney upon this indemnity, it would be going too far, even if Janney was solvent, to say, that a Court of equity could not interpose and stay a recovery upon the bonds, but that the party must be turned round to his remedy at law upon his indemnity. But, in the present case, it would be gross injustice, and a certain denial of all remedy, to refuse relief on this ground, Janney having become insolvent. There was, then, no defence at law which Shreeve could have set up against these bonds, nor had he any other remedy at law to which he was bound to resort.

1827.

Scott
v.
Shreeve.

The plaintiff below entitled to relief in equity, not having a complete and adequate remedy at law.

Was there, then, any defence which he could have set up against a suit upon his note if he had permitted the bank to prosecute him? None is perceived by the Court. He stood upon the note as maker, and was liable to the bank as such; and although, by the agreement between him and Janney, the note was continued in that form for the convenience of Janney, yet the bank was no party to that arrangement, and could not be bound by it. Even admitting the knowledge of that agreement by the bank, it certainly could not have been set up as a defence to the note, unless it could be shown, that there was an express or implied agreement to accept Janney as the debtor, and to discharge Shreeve.

It has been urged, however, on the part of the appellants, that the statute of limitations had run against the note, and that Shreeve might and ought to have availed himself of it,

1827.

Scott
v.
Shreeve.

The plaintiff not bound to rely upon the statute of limitations.

If the statute of limitations had run against this note, and might have been pleaded, we should be very unwilling to say that Shreeve was bound to plead it. It is a defence which a party may often avail himself of with great justice and propriety. But whether he will or not, must be left to his own election. It is, however, unnecessary to inquire into the duty or obligation of Shreeve to have pleaded the statute, under the circumstances of the case, because we do not think it could have been set up as a defence to the action.

The letter of license given by the bank to Shreeve bears date on the 12th January, 1809, and was for the term of seven years, which, of course, expired in January, 1816. It certainly cannot be pretended that the statute ran during the continuance of this letter of license. Payment of the note was demanded by the bank, and made by Shreeve, in June, 1818, about two years and five months after the expiration of the letter of license, a period much within the time necessary to bar the action.

The assignee of the bonds held to take them, subject to all the equities existing between the original parties.

The next inquiry is, whether Scott, the assignee of Janney, has acquired any greater right or interest in these bonds than Janney himself had. So far as relates to the question, whether the consideration had failed, the assignee stands precisely in the situation of the original party. He took the bonds subject to all existing equities. This is the settled rule in chancery, and that which is recognised by the laws of Virginia which are in force in Alexandria. Nor has any thing occurred, since the assignment, to give to Scott or the creditors of Janney any additional rights. These bonds were assigned by Janney as his own property, and for the benefit of his own creditors, which was a violation of the trust and confidence reposed in him by Shreeve. They were given expressly, according to the agreement of the parties, to provide for the payment of the note to the bank of Potomack; and it is admitted that no part of this note has been paid out of the funds of Janney. The note had been reduced from $6,300 to $3,306, at the time Janney failed in the spring of 1809; but these payments were made out of Shreeve's funds, assigned by Janney to Roberts by the deed of the 11th of August, 1808. And it is also admitted that Scott, the assignee,

has made no payments upon this note since the assignment to him. The creditors of Janney have, therefore, been deprived of none of his funds, nor can they have any right to claim the benefit of those bonds, which must be deemed to have been held by Janney in trust for the bank, and not as his own property.

1827.

Scott
v.
Shreeve.

Remaining inquiry, whether the bank had accepted Janney as their sole debtor, and discharged the plaintiff.

The o y remaining inquiry is, whether the bank, by any express or implied agreement, accepted Janney as their debtor, and discharged Shreeve from his responsibility.

The answer of the appellant, Scott, alleges, that Janney considered himself as having assumed the payment of the note in question, and that he was considered debtor to the bank for the same, and was solely relied upon by the bank for the payment of the note. That he believed the bank had full knowledge of the deed of the 11th of August, 1808, by which provision was made for the payment of the note, and were satisfied with it. And he further alleges, that the bank was so well satisfied with this provision, that it considered neither Janney nor Shreeve liable for it.

If these allegations were supported by proof, they would go far, if not conclusively, to show that the bank had adopted Janney as solely responsible for the note, and had discharged Shreeve. If so, the payment by Shreeve would be considered voluntary, and without any legal obligation, and would form no objection to the recovery on the bonds.

The bank, however, denies it was a party to the arrangement made by the deed of the 11th of August, 1808, or that it made any stipulation or agreement with Shreeve or Janney, in any manner connected with that deed, unless the order of the 12th of January, 1809, (the letter of license,) be considered as connected with it. The answer further denies, that the bank ever did release, or agree to release, Shreeve, or that it ever did look solely to Janney, or the trust estate created by the deed of the 11th of August, 1808. It admits, that when this deed was executed, Janney and Roberts were both directors of the bank, but avers, that no proposition in relation to it ever came before the board previous to the 12th of January, 1809, when the letter of license was granted to Shreeve, with the concurrence of Janney and Roberts, sitting and acting as directors of the bank.

The answer of Scott is not evidence against the bank, and his allegations with respect to the bank's having accepted Janney as the sole debtor for this note. are entirely unsupported by proofs, and must be laid out of view, as they are positively denied by the answer of the bank, and which answer is strongly supported by the order. for the letter of license, which was granted subsequent to the arrangement between Shreeve and Janney. For, if the bank had considered Shreeve exonerated from the payment of the note, there could have been no necessity for, or propriety in, giving him a letter of license. Indeed, it would have been absurd to give a letter of license to a man who was not a debtor to the bank. The order for this purpose is cautiously drawn, so as to retain the responsibility of both maker and endorser. The indulgence is granted expressly upon the condition that it is sanctioned by Janney, and without lessening the right of the bank against him.

Nor is the bank chargeable with negligence that can in any manner prejudice its rights, or of which the appellant has any right to complain. The indulgence was granted with the concurrence of Janney, and under an impression, no doubt, by all parties, that the trust fund created by the deed of the 11th of August, 180° would be sufficient to satisfy this note. And it was upon this supposition, no doubt, that the letter of license for seven years was granted to Shreeve. No steps would be taken against him until the expiration of that time, and demand of payment was made as soon thereafter as he returned to Alexandria.

The utmost, then, that can be alleged against the bank, is, that it had full knowledge of the provision made by the deed of the 11th of August, 1808, for the payment of this note. And, admitting that provision to have been amply sufficient, it would not bind the bank without its assent to resort to that fund alone, and discharge the parties to the note. The bank could have no objection to the provision made by that deed for the payment of the note, as it would add to its security if the maker and endorser were also held responsible. And the proceedings in relation to the letter of license are conclusive to show, that it was the understanding of all parties, that the bank had not. at that

time, relinquished its claims upon Janney and Shreeve for the payment of the note.

We are, accordingly, of opinion, that the decree of the Court below, granting a perpetual injunction against the appellant, and a dismission of the bill as to the bank, be affirmed. with costs.

1827.

Ramsay
v.
Allegre.

———

[ADMIRALTY JURISDICTION.]

RAMSAY *against* ALLEGRE.

*Quære*, Whether a suit *in personam* in the Admiralty may be maintained against the owner of a ship by material men furnishing supplies for the ship in her home port, where the local law gives no specific lien upon the ship which can be enforced by a proceeding *in rem ?*

However this may be in general, such suit cannot be maintained where the owner has given a negotiable promissory note for the debt, which is not tendered to be given up, or actually surrendered, at the hearing.

APPEAL from the Circuit Court of Maryland.

This was a libel filed in the District Court by the appellant, Ramsey, against the respondent, Allegre, alleging that the appellant, at the special instance and request of the respondent, owner, ship's husband, or consignee of the schooner Dorothea, had performed various work and labour, and found and provided various materials for the use of the said schooner, to equip and prepare her for a voyage on the high seas, amounting to the sum of 2,428 dollars, 84 cents; that the appellant had often applied to the respondent for payment, and been refused; and praying process according to the course of the Admiralty, &c. A plea was filed by the respondent, alleging, among other things, that he had given the libellant his negotiable promissory note for the debt. It appeared, at the hearing, that the appellant had furnished the materials in question at the respondent's request. and

that the latter had given his negotiable promissory note for the same, which the appellant accepted, giving the following receipt therefor: " Received a note, at four months, which, when paid, will be in full for the above amount." The note not having been paid, this suit was brought. The District Court dismissed the libel, upon the ground, that the jurisdiction of that Court, as an Instance Court of Admiralty, in the cause, was waived by the acceptance of the promissory note; and the decree having been affirmed in the Circuit Court, upon the same ground, the cause was brought by appeal to this Court.

Feb. 19th.

The *Attorney General* and Mr. *Meredith*, for the appellant, argued, that the District Courts, proceeding as Courts of admiralty and maritime jurisdiction, might take cognizance of material suits by material men, either *in personam* or *in rem*.[a] The only question here was, whether the jurisdiction was waived by the appellant's taking the note as conditional payment. The note did not extinguish the debt, and, consequently, could not affect the jurisdiction which originally attached on account of the nature of the debt. Without some special agreement to consider the note as payment, it could not be so regarded. It only operated as a suspension of the remedy during the time allowed for its payment. If unpaid, the party might resort to his original right of action, as if no note had been given.[b] Such is the doctrine of the common law; and the civil law, which gave the rule to the admiralty, would be found in accordance. A *novation* is the substitution of a new for an old debt, by which the latter is extinguished. It may be made of a debt payable at a future day. or of a debt presently due, by a new engagement, allowing a term of credit. But the consent of the creditor must be positively declared, as the law will not presume that he means to abandon his rights under the first contract.[c] No authority or principle could be found to war-

*a* The General Smith. 4 *Wheat. Rep.* 438.

*b* Chitty on Bills, 5 ed. 123. 130. 6 *Cranch.* 253, 2 *H. Black.* 317. 5 *Term Rep.* 111. 1 *Evans' Pothier*, 286. (a.)

*c* Evans' Pothier, 380. 386.

rant the assertion, that, although the original contract in this case was not extinguished, the suspension of the right of action took away the jurisdiction of the admiralty, so that it could not again be resorted to.