Roberta FLACK et al., Appellants,

v.

Benjamin LASTER, Appellee.

No. 13042.

District of Columbia Court of Appeals.

Argued Nov. 9, 1978.

Decided June 13, 1980.

---

John T. Boese, Washington, D. C., with whom Milton Eisenberg and David J. Martin, Washington, D. C., were on brief, for appellants.

Florence King, Washington, D. C., with whom Wiley A. Branton, Washington, D. C., was on brief, for appellee.

Before KERN and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

Appellants seek review of an order granting specific performance of a contract for the sale of land in the District of Columbia. They assert that the trial court erred in holding that (1) the agreement of July 21, 1975 was a valid contract between the parties for sale of the premises, rather than a mere lease; (2) a co-party purchaser with appellee had validly assigned his interest in the contract to appellee and thus was not an indispensable party to the action; (3) appellee was willing and able to perform in a timely fashion; (4) a clause within the contract prohibiting assignments without the written consent of the lessor was intended to cover the lease portions of the agreement and did not prohibit the assignment of the interest of the co-purchaser; and (5) appellee was entitled to specific performance. Finding no error requiring reversal, and that the evidence supports the findings and conclusions of the trial court, we affirm.

Early in May of 1975, Congressman Harold Ford was contacted by John Days, an attorney in the District of Columbia acting as agent for appellant Roberta Flack, to discuss the purchase of 244 G Street, S.W., a house owned by Ms. Flack,[1] Congressman and Mrs. Ford signed a sales contract to buy the house for $65,000, but after Days spoke with appellant Flack's business manager about the arrangements, he prepared a second sales contract reflecting a new purchase price—$68,500—for the Congressman's signature. On May 8, 1975, this second contract was signed by both the Congressman and Days in his capacity as agent.

Appellee Laster first became involved in this transaction when Ford was unable to

---

1. Appellant Flack does not deny Days was her agent for this purpose.

obtain immediate financing for the purchase. Over the course of the next two weeks a series of conversations took place between Ford's aide, appellee Laster, and Mr. Days concerning Mr. Ford's taking immediate possession of the premises while his search for financing continued. At one point during these negotiations, Days explained that a possible solution would be for him and Mr. Ford to execute a short-term lease. By this time, appellee had indicated his own interest in purchasing the property with the Congressman. Days made numerous telephone calls to Mr. Ford's office to settle upon the financial details of the contract, but on most occasions, he spoke only with appellee Laster, Mr. Ford's administrative aide. The agreement at issue before this court was drawn up in response to the Fords' desire to move into the premises while they continued to search for financing.

On July 21, 1975, Days met with appellee and Mr. Ford, and the three men executed a short-term "lease" agreement for the premises to provide the temporary housing requested by Messrs. Ford and Laster. Mrs. Ford was not a party to this agreement. Days had prepared a standard form lease agreement that was to run for a period of two months "or longer if necessary to obtain financing for purchase." The document contained preprinted lease terms. The duration of the tenancy, "two months," was typed in by Days. The phrase extending the term was handwritten and initialed by the three men after the purchasers expressed concern that they could be evicted if they had not obtained financing by the time the two-month period had elapsed. The parties agreed to a monthly rental payment of $475.00, and, at the suggestion of appellee and Mr. Ford, the document concluded with the following paragraph typed in by Days:

All payments made pursuant to the terms of this Agreement shall be applied toward the purchase price of the premises should the lessees purchase said premises within the term of this Agreement, in the agreed amount of sixty-eight thousand five hundred dollars ($68,500).

Appellee and Mr. Ford moved into the premises and commenced joint payments to the appellants pursuant to the agreement.[2] They did not arrange for financing by the end of the two-month lease term, and by November 1975, Days offered the assistance of a consultant to procure a loan. The consultant obtained a loan commitment through Jefferson Federal Savings and Loan Association in early January 1976.

The date for settlement on the sale of the property was set for January 23, 1976. However, appellee, finding that his attorney was out of town, notified Days of his desire to have his attorney present at settlement in a telephone conversation of January 22, 1976. Mr. Ford was in his home district in Memphis on that date. Neither appellee nor Ford appeared for settlement on January 23. Appellee telephoned Days some time after January 23rd and tried to arrange for settlement on January 30, but Days informed him that Roberta Flack had decided not to sell the property and instead had instructed Days to file an action for summary possession. The suit ultimately was dismissed for lack of notice,[3] and thus appellee and Mr. Ford remained in possession of 244 G Street, S.W. through the spring, while the statutory notice period ran. When Mr. Ford vacated the premises in July,[4] he orally assigned his interest in the transaction to appellee. The assignment was reduced to writing on September 13, 1977.

---

2. Payments were made jointly until July 1976, when the Congressman vacated the premises. Appellee has continued to make full monthly payments since that time.

3. The Rental Accommodations Act of 1975 requires that tenants be given ninety (90) days notice to vacate. D.C.Code 1978 Supp., § 45–1653(c).

4. Mr. Ford moved shortly after a second landlord and tenant action for possession was filed by appellants on July 16, 1976, because he was about to announce for re-election and did not want the matter to interfere with his campaign.

Appellee obtained financing in his own name from two sources [5] in July 1976, after receiving the oral assignment of Mr. Ford's interest, but appellant Flack continued to refuse to convey title pursuant to the contract of sale even after appellee informed her of his funding. In August 1976, appellee filed an action for specific performance, and the suits for possession and specific performance were consolidated for trial.

We now turn to the appellants' claims of error in the trial court's findings of fact and conclusions of law and judgment entered on November 8, 1977.

The factual findings and the legal conclusions of the trial court may not be set aside in review "except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C. Code 1973, § 17–305(a). *See also John McShain, Inc. v. L'Enfant Plaza Properties, Inc.*, D.C.App., 402 A.2d 1222, 1224 (1979); *Max Holtzman, Inc. v. K&T Co.*, D.C.App., 375 A.2d 510, 512 (1977).

We are asked first to consider whether the trial court erred as a matter of law in concluding that the agreement of July 21, 1975 was a contract for sale between the parties rather than simply a contract for lease.[6] The sales document signed by Days and Ford on May 8, 1975 does not govern disposition of the property, since the May 8th agreement did not bind the seller. At trial, Days testified on direct examination that no purchase contract existed for any of the parties "because the purchase contract that Harold Ford signed was never executed by the owner, Roberta Flack." There was no evidence to the contrary. Thus, the only document that is the subject of litigation is the "lease" agreement, which was signed by appellee, Ford, and by Days as agent for Roberta Flack enterprises.

In interpreting the language of a contract, we may consider both the words used in the instrument and other manifestations of intention to determine the meaning to be attached to them. *Edstrom v. Kuder*, D.C.App., 351 A.2d 506, 508 (1976); *Standley v. Egbert*, D.C.App., 267 A.2d 365, 369 (1970); *Luther Williams, Jr., Inc. v. Johnson*, D.C.App., 229 A.2d 163, 165 (1967); Restatement of Contracts § 227 (1932). When language is inexact, the surrounding circumstances should be examined to determine the meaning of the words used. 3 Corbin, Contracts § 542 (1960); *cf.* 4 Williston, Contracts § 609 (3d ed. 1961). There is ample evidence in the record to support the findings and conclusions of the trial court that the contract of July 21, 1975 was executed in contemplation of a sale of the property to appellee and the Fords as soon as they were able to obtain financing. Both the language of the agreement and the surrounding circumstances support the court's findings and indicate the clear intent of the parties to complete a sale rather than engage in a mere lease arrangement.[7] While the form used was a standard lease agreement, the parties modified the printed terms in two significant ways, each of which demonstrates that the parties planned to enter into a lease as a way for the appellee and Mr. Ford to gain immediate possession of the premises while the details of eventual performance under the contract to purchase were worked out. The term of the agreement was typed in by Mr. Days as "two months," and the parties later initialed a handwritten modification of that term: "or longer if necessary to obtain financing for purchase." The parties also agreed to include a typewritten clause at the end of the agreement providing for payments to be credited toward the purchase price of $68,500.

---

**5.** American Federal Savings agreed to allow appellee to assume the existing mortgage it held on the property, and Jefferson Federal Savings and Loan Association made a first trust loan commitment to appellee.

**6.** A lease is construed in the same way as a contract. *District of Columbia Dept. of H. & D.C. v. Pitts*, D.C.App., 370 A.2d 1377, 1379 (1977); *Javins v. First National Realty Corp.*,

138 U.S.App.D.C. 369, 373, 428 F.2d 1071, 1075, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).

**7.** Intent is a question of fact that necessitates inquiry into not only the written instrument but also the circumstances of its execution. *Luther Williams, Jr., Inc. v. Johnson, supra* at 165.

■ These two additions clearly are inconsistent with the spirit and provisions of a simple lease agreement. When there is a conflict or an inconsistency between a printed provision and one inserted by the parties especially for the particular transaction, the printed clause must yield to the insertion. *Hagan v. Scottish Union & National Ins. Co.*, 186 U.S. 423, 426, 22 S.Ct. 862, 46 L.Ed. 1229 (1902); *McReynolds v. Mortgage & Acceptance Corp.*, 56 App.D.C. 342, 343, 13 F.2d 313, 314 (1926). *See also Baker v. Gottlieb*, 76 U.S.App.D.C. 403, 404, 132 F.2d 18, 19 (1942); *Deuel v. McCollum*, 1 Ariz.App. 188, 190–91, 400 P.2d 859, 861–62 (1965); 3 Corbin, Contracts § 548; Restatement of Contracts § 236(e). Thus, since it is plain from the language added to the agreement that the parties intended to contract for the sale of 244 G Street, S.W., appellants' argument that the document evidences a mere lease of the premises is without merit.

Apart from the terms of the agreement, the circumstances surrounding the execution of the document further show that all the parties contemplated a sale rather than a rental of the property. Mr. Days, agent for appellant Flack, testified at trial that the agreement was drawn up in response to appellee's and Congressman Ford's desire to occupy the premises while they searched for financing. He also testified that the two-month term was extended in response to the appellee's and Ford's objection that they could be evicted according to the original agreement at the end of two months if they had not obtained financing for the purchase. The evidence presented to the trial court was that from the date of execution of the July 21 agreement, all further conversations and correspondence between the parties dealt with financing and a settlement date. Mr. Days admitted in his testimony that he ordered a title examination on his own initiative after December 16, 1975. He prepared for settlement on the property in December 1975 and January 1976, set settlement for January 23, 1976, and was willing to conduct settlement without asking for a separate contract of sale.

Moreover, appellant Flack stated in her deposition that it was not her intention to rent the house to Mr. Ford, but to sell it to him. Financing arrangements and settlement planning are indicative of a sale rather than a lease transaction and thus the evidence of Mr. Days' activities, coupled with the expressed intention of his principal, appellant Flack, clearly support the trial court's finding that the July 21 agreement was a valid contract for sale.

■ Appellants argue that Days was not authorized to act as appellants' agent for the sale of the property. The trial court found that appellee and Mr. Ford entered into a written agreement with appellants, "through the duly authorized agent for [appellants], John W. Days, Esquire" on July 21, 1975, "wherein the [appellants] agreed to sell . . . 244 G Street, Southwest . . . for a total purchase price of $68,-500.00." The court found further that "[s]ometime in November of 1975, John W. Days, as agent for the [appellants], spoke with . . . Laster regarding arrangements for financing," and that "[p]ursuant to said conversation, Mr. Days obtained the services of one Ernest Elland to procure a loan for the purchasers." There is ample evidence to support the findings of the trial court. It is clear that appellant Flack, Days' principal, intended that Days sell the premises for her. To that end, Days prepared two sales contracts on the property for Ford's signature, and Days signed the second instrument in his capacity as agent. Furthermore, at trial, attorney Days admitted on cross-examination that as agent, he was directed to effectuate the sale of the property.

Appellants also assert that Mr. Ford's assignment of his rights to appellee was inadequate to support appellee's claim and that Ford should have been joined as an indispensable party to this action, in accordance with Super.Ct.Civ.R. 19(a).

■ We agree with the trial court's determination that the assignment was val-

id.[8] In general, all contractual rights may be assigned,[9] including the right to sue for enforcement of a claim.[10] The right to assign is presumed, based upon principles of unhampered transferability of property rights and of business convenience. The effectiveness of an assignment does not normally depend upon the consent of the obligor unless the rights to be assigned involve the performance of unique personal services. *See, e. g., Bewley v. Miller*, D.C. App., 341 A.2d 428 (1975). The transaction at issue does not amount to such a personal services contract, and thus, appellants cannot contest the validity of the assignment on that score.

▇ Appellants argue extensively that the statute of frauds bars appellee from proving the assignment ever occurred. The assignor, Mr. Ford, alone has standing to challenge the assignment on this ground, for he, and not the appellants, was a party to that agreement.[11] Mr. Ford has not come forward to refute the assignment, and therefore the defense of the statute of frauds is unavailable.

▇ However, the parties had agreed to the following anti-assignment provision that was one of the printed terms in the July 21 agreement: "said lessees covenant and agree . . . that they will not assign this lease or any portion of the term, or sublet the premises or any part thereof, without the written consent of the lessor." While courts will honor an anti-assignment clause in contracts when it contains clear, unambiguous language,[12] here, appellant Roberta Flack acquiesced in the assignment by accepting rental payments from appellee after July 1976, the date of the oral assignment agreement.[13] Appellant Roberta Flack did not object when Mr. Ford vacated the premises, leaving appellee in sole possession of the house. Although a suit for possession had been filed against Mr. Ford and appellee jointly, appellant Flack accepted checks drawn by appellee alone as payment pursuant to the July 1975 agreement, and continued to deal with appellee once appellee obtained financing for the premises on his own. Appellant Flack thus consented to the assignment by her actions, and cannot now challenge its effectiveness. *See Diatz, supra; Mars v. Spanos, supra. Cf. Amberger & Wohlfarth, Inc. v. District of Columbia*, D.C.App., 300 A.2d 460, 463 (1973). Accordingly, we hold that the trial court did not err in concluding that the assignment between Mr. Ford and appellee was valid.

▇ The appellant also contends that the trial court erred in ruling that Mr. Ford was not an indispensable party to this action. If a party is indispensable, the action must be dismissed unless the party is joined.[14] A party is indispensable when he has an interest in the proceeding not dis-

8. This was not an assignment to a third party, as is often the case; rather, the appellee here was a party to the original occupancy agreement and therefore not a stranger to the transaction. The anti-assignment clause is inapplicable to this situation.

9. *See, e. g.,* D.C.Code 1973, §§ 28:9–102(1)(b); 28:9–104(f); 28:9–318(4). *See also* D.C.Code 1973, §§ 28–2302, –2303, –2304.

10. *See* D.C.Code 1973, § 28–2304.

11. The statute of frauds is codified in D.C.Code 1973, §§ 28–3501 through –3505. "The defense of the statute of frauds is personal to the party to the contract and those in privity with him, and so a third party may not assert its invalidity." Calamari & Perillo, *The Law of Contracts* 488 (1970). This rule is not surprising, for in general, a stranger to a contract may not sue to enforce its terms. *See Chong Moe Dan v. Maryland Casualty Co. of Baltimore*, D.C.Mun. App., 93 A.2d 286, 288 (1952); *Marranzano v. Riggs Nat'l Bank of Washington*, 87 U.S.App. D.C. 195, 196, 184 F.2d 349, 350 (1950). *But see Blake Construction Co., Inc. v. Laborers' Int'l Union of N.A.*, 167 U.S.App.D.C. 86, 91, 511 F.2d 324, 329 (1975).

12. *See, e. g., Bewley v. Miller, supra* at 430 (1975); *Fox-Greenwald Sheet Metal Co., Inc. v. Markowitz Bros., Inc.*, 147 U.S.App.D.C. 14, 452 F.2d 1346 (1971).

13. *Diatz v. Washington Technical School*, D.C. Mun.App., 73 A.2d 227, 228–29, *rehearing denied*, 73 A.2d 718 (1950), *aff'd sub nom. Sobel v. Diatz*, 88 U.S.App.D.C. 329, 189 F.2d 26 (1951). *Mars v. Spanos*, 78 U.S.App.D.C. 230, 231, 139 F.2d 369, 370 (1943).

14. *See* Super.Ct.Civ.R. 19(a) and (b).

tinct and severable, and a final decree cannot be made in the party's absence without having an injurious effect on that interest; when the court cannot do complete and final justice without affecting the party's interest; or when the final determination of the controversy in the party's absence will be inconsistent with equity and good conscience.[15] While appellee and Mr. Ford originally entered into the July 1975 agreement with appellants as co-tenants,[16] this relationship was effectively severed by the assignment of all Ford's interest in the premises to appellee. Once property or rights have been assigned, the assignee "stands in the shoes of the assignor"[17] and can sue in his own name to enforce the rights assigned. Since the assignment in this case was absolute and unconditional, the assignor is not a necessary party to this suit.

▆▆▆▆ Finally, appellants challenge the propriety of granting specific performance of this contract for sale and assert that appellee was neither willing nor able to tender his performance in a timely fashion. Specific performance is a purely equitable remedy that rests in the discretion of the court.[18] The contract to be specifically enforced must, in the words of Pomeroy, be

concluded, certain, unambiguous, mutual, and upon valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake . . . not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court.[19]

Specific performance of a contract is ordered when the legal remedy, usually money damages, is deemed to be either inadequate or impracticable.[20] When land is the subject matter of the agreement, the legal remedy is assumed to be inadequate, since each parcel of land is unique; thus, equitable jurisdiction in this case is firmly established.[21]

▆▆▆▆ A purchaser seeking specific performance must show that he was ready, able and willing to perform the contract.[22] He must also show that any delays were not caused willfully by him, and that the seller was not harmed by the delays.[23] Where no time is specified for the performance of an act, the law implies that it must be done within a reasonable time. *Drazin v. American Oil Co.*, D.C.App., 395 A.2d 32, 34 (1978). The court below found that appellee was ready, willing, and able to perform his contractual obligations within a reasonable time, and we find that there is ample evidence to support this conclusion.

**15.** *Harmony Corp. v. Penick*, D.C.App., 192 A.2d 301, 303 (1963); *Young v. Swafford*, D.C. Mun.App., 102 A.2d 312, 313 (1954); *Alaska Freight Lines v. Weeks*, 18 F.R.D. 64, 65 (D.D. C.1955); Super.Ct.Civ.R. 19(a).

**16.** *See Clayman v. Goodman Properties, Inc.*, 171 U.S.App.D.C. 88, 93, 518 F.2d 1026, 1031 (1973); *Welch v. Sherwin*, 112 U.S.App.D.C. 124, 126, 300 F.2d 716, 718 (1962); D.C.Code 1973, § 16–2101.

**17.** *Scott v. Shreeve*, 25 U.S. (12 Wheat.) 605, 608, 6 L.Ed. 744 (1827); *City Mortgage Investment Club v. Beh*, D.C.App., 334 A.2d 183, 184 (1975); *United States Nat'l Bank of Galveston, Tex. v. Madison Nat'l Bank*, 355 F.Supp. 165, 169 (D.D.C.1973), aff'd, 489 F.2d 1273 (D.C.Cir. 1974).

**18.** *See Willard v. Tayloe*, 75 U.S. (8 Wall.) 557, 19 L.Ed. 501 (1870); *Edstrom v. Kuder, supra* at 508 (1976).

**19.** 4 J.N. Pomeroy, *A Treatise on Equity Jurisprudence* § 1404 (5th ed. 1941). *See also Mela-*

*ro v. Mezzanotte*, 122 U.S.App.D.C. 244, 245, 352 F.2d 720, 721 (1965); *Crowell v. Gould*, 68 App.D.C. 297, 300, 96 F.2d 569, 572 (1938); *Barnes v. Sind*, 223 F.Supp. 572, 576 (D.Md. 1963), *vacated and remanded*, 341 F.2d 676 (4th Cir.), *rehearing en banc denied*, 347 F.2d 324 (4th Cir.), *cert. denied*, 382 U.S. 891, 86 S.Ct. 183, 15 L.Ed.2d 149 (1965); Restatement of Contracts § 370.

**20.** 4 Pomeroy, *supra* § 1401.

**21.** *City Stores Co. v. Ammerman*, 266 F.Supp. 766, 776 (D.D.C.1967), aff'd 129 U.S.App.D.C. 325, 394 F.2d 950 (1968); 4 Pomeroy, *supra* § 1402.

**22.** 4 Pomeroy, *supra* § 1407.

**23.** *See Cadem v. Nanna*, 243 Md. 536, 541, 221 A.2d 703, 708 (1966); *Chapman v. Thomas*, 211 Md. 102, 126 A.2d 579, 582 (1956).

All parties to the July 1975 agreement fully intended to contract for the sale of the property, and the record reflects that Days, agent for appellants, took steps to assist the purchasers in obtaining financing for the premises. While the contracting parties originally believed that two months would be a reasonable time from the signing of the agreement until settlement, Attorney Days himself added the phrase, "or longer if necessary to obtain financing for purchase", thus clearly acknowledging that a loan commitment could take longer to acquire. Appellee attempted to arrange for financing both with Mr. Ford, and on his own after July 1976, and appellee ultimately was successful in his endeavors. It is for the trial court to determine the factual question of whether this period of several months was a reasonable amount of time, considering the practices of lending institutions, the availability of credit, and the particular circumstances of this case.

The court found that appellee knew on or about January 13, 1976, that the settlement date was set for January 23. Although neither appellee nor Ford appeared for settlement on that date, there was no evidence either that Days or appellant appeared for settlement. The court stated in its conclusions of law that "Plaintiff Laster was ready, willing and able to perform in a reasonable time the obligations imposed upon him in the performance of the terms of the contract." Thus, after weighing the testimony presented at trial concerning a January 22 telephone conversation between appellee and Days, the court implicitly decided that Days acquiesced in delaying the settlement until the end of January, by failing to object when appellee suggested the postponement during the January 22 telephone call. Upon careful consideration, we cannot say that the court erred in finding that appellee was ready, willing and able to perform his obligations within a reasonable time.

Appellants failed to establish that they were harmed by the delay in consummating the sale. Appellant Roberta Flack merely changed her mind about wanting to sell the property. While the value of this property may well have appreciated between the planned January 23rd settlement date and July, when appellee was prepared to conclude the transaction on his own, specific performance will not be denied simply because appellants can make more money by selling to another purchaser.[24] The offeror is master of his offer, and appellant Flack must have considered real estate values when she stated her asking price to Mr. Ford.[25] Appellee as copurchaser under the July 1975 agreement and as assignee of the other one-half interest was entitled to enforce the contract to purchase the premises. Accordingly, we hold it was appropriate for the trial court to order specific performance of this contract for the sale of real estate.

The decree of the trial court is affirmed.

*Affirmed.*

---

**24.** *See Ammerman, supra* at 779. *See also Willard v. Tayloe, supra,* in which the Supreme Court stated that if the contract then made was a firm and reasonable one, "the parties are considered to have taken upon themselves the risk of subsequent fluctuations in the value of the property, and such fluctuations are not allowed to prevent its specific performance," and *Matlack v. Arend,* 2 N.J.Super. 319, 322, 63 A.2d 812, 815 (1949), where the court noted, "[u]nless the transaction is unconscionable, it is not the eligible function of the court to liberate those who apprehend that they have engaged in a bad bargain."

**25.** Although appellants in their brief argue that the sale of the premises to Mr. Ford was intended to be a special offer by appellant Flack out of friendship and for personal reasons, the record at trial does not reflect these special circumstances, and therefore, we cannot consider these facts as a bar to specific performance for appellee Laster.