**AMERICAN UNIVERSITY IN DUBAI,**
Petitioner/Appellant,

v.

**DISTRICT OF COLUMBIA EDUCATION LICENSURE COMMISSION, et al., Respondent/Appellee.**

Nos. 05–AA–458, 05–CV–459,[1] and 05–CV–643.

District of Columbia Court of Appeals.

Argued Jan. 4, 2007.
Decided Aug. 9, 2007.

---

1. This appeal was mooted by our Order dated     May 17, 2005.  *See infra* note 12.

Frederick D. Cooke, Jr., Washington, DC, with whom Leslie H. Wiesenfelder was on the brief, for American University in Dubai.

James C. McKay, Jr., Senior Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Todd S. Kim, Solicitor General, were on the brief, for the District of Columbia.

Susan M. Cook, with whom Steven J. Routh, Washington, DC, was on the brief, for American University.

Before RUIZ and BLACKBURNE–RIGSBY, Associate Judges, and SCHWELB, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

The American University in Dubai appeals a trial court order directing the Education Licensure Commission to revoke its license where AUD was not made a party to, and did not have notice of, the proceeding before the Superior Court.[2] We conclude that the failure to join AUD as a

---

2. Throughout this opinion, we will refer to the American University in Dubai as "AUD."

party to the Superior Court action that resulted in the revocation of its educational license was reversible error, and that the Commission's proceeding following the trial court's order failed to provide AUD with the required notice. Accordingly, we vacate the trial court's April 15, 2005 Order and the Commission's May 11, 2005 Order revoking AUD's license, which was predicated on the trial court's order, and we remand the case to the Superior Court with directions to dismiss the action for failure to join AUD as an indispensable party.

In reaching our conclusion, we focus our analysis on three questions: (1) whether the trial court had jurisdiction to hear the action brought by American University challenging the Education Licensure Commission's renewal of AUD's license and seeking revocation of AUD's license;[3] (2) whether the trial court was required to join AUD as an indispensable party in an action which led to its license being revoked; and (3) whether AUD's rights were violated when the Commission, following the trial court's order, revoked AUD's license without the required notice.[4] We answer each of these questions affirmatively, and following a discussion of the relevant factual and procedural background, we will address each question in turn.

## I. Factual Background

AUD is an accredited institution founded in October 1995 and located in Dubai, United Arab Emirates. It is a private, for-profit, non-sectarian institution of higher learning and a branch campus of the American InterContinental University in Atlanta, Georgia. Although AUD does not currently operate a campus in the District of Columbia, AUD sought licensure in the District of Columbia so that it would have the ability to confer degrees in the District, and so that it could market itself as having the ability to confer degrees in the District. According to AUD's president Dr. Lance de Masi in his May 9, 2005 Declaration, which is part of the trial court record: "ELC [Education Licensure Commission] licensure has materially contributed to AUD's reputation for quality and its international statute [sic] as a highly regarded institution of higher education in the UAE, the Gulf Region and throughout the world."

On June 11, 1998, the Commission issued Resolution No. D–98–06, granting AUD a District of Columbia license for a term ending June 30, 2001. Two days before AUD's license was due to expire, the Commission held Public Session No. 04–01, which counsel for AU attended, and during which, counsel raised objections to the renewal of AUD's license on the grounds that AUD was using the word "American" in its title in violation of D.C.Code § 29–618 (2001). Section 29–618 specifically prohibits an institution of learning incorporated[5] or doing business

---

**3.** American University ("AU"), as distinguished from AUD, is a private, non-profit, post-secondary institution which is located in, and has continuously operated in, the District of Columbia since 1893. The University was created by a special act of Congress and is the only University specifically exempted from D.C.Code § 29–618 (2001) and authorized to use the name "American" in its title.

**4.** The Education Licensure Commission ("Commission") is an administrative agency of the District of Columbia. The Commission

was established in 1977 as the sole administrative agency responsible for the regulation of private, post-secondary, degree-granting, educational institutions in the District, and is authorized to license educational institutions located or incorporated in the District and operated elsewhere. *See* 16 DCMR § 2101.2 (1998).

**5.** There is no evidence in the record that AUD is independently incorporated in the District of Columbia, however the American Inter-Continental University (of which AUD is a

in the District, from using the word "American" in its title.[6] Despite AU's objections, the Commission granted AUD an extension of its license for one month pending receipt from AUD of an application for license renewal.

On July 19, 2001, the Commission approved, by resolution, a six-month extension of AUD's license, not to exceed February 2, 2002. The Commission's approval was subject to several requirements, most notably the requirements that AUD schedule a follow-up site evaluation and change its name to omit the word "American." At the Commission's next public session, on July 26, 2001, counsel for AU reiterated its objections to the Commission's renewal of AUD's license on the grounds that AUD had not removed "American" from its title and was still in violation of D.C.Code § 29–618. However, the Commission again voted to extend AUD's license for an additional six months. Thereafter, in a letter, dated September 26, 2001 to the Commission, the president of AUD, Dr. Lance de Masi, confirmed AUD's intent to seek full renewal of its license beyond the period granted by the July 19, 2001 resolution. Dr. de Masi also advised the Commission in his letter that AUD did not intend to change its name:

With regard to the issue surrounding the name of our institution, I urge the Commission to consider that AUD enjoys a very strong and positive reputation.... A change in the University's name would cause enormous confusion as well as harm the interest of current students and, most particularly, graduate[s]. While we are therefore unwilling to abandon our institution's name and identity, we are certainly amenable to working with the government of the District of Columbia to resolve this matter in an amicable manner.

Although the site evaluation was conducted,[7] AUD never changed its name as directed by the Commission.

On November 29, 2001, the Commission again temporarily extended AUD's license for a period ending no later than August 3, 2002, subject to an express requirement that AUD change its name to comply with D.C.Code § 29–618. The Commission held its final hearing on the matter on October 31, 2002. Over the continuing objections of AU, the Commission issued Resolution No. D–02–010 at this hearing, renewing AUD's license through August 4, 2005, subject to six requirements, none of which, notably, was for AUD to change its name.

branch campus) is registered with the D.C. Department of Consumer and Regulatory Affairs as a "Foreign Business Corporation."

**6.** D.C.Code § 29–618 provides, in pertinent part:

No institution incorporated under the provisions of this subchapter shall use as its title, in whole or in part, the words United States, federal, *American*, national, or civil service, or any other words which might reasonably imply an official connection with the government of the United States, or any of its departments, bureaus, or agencies, or of the government of the District of Columbia, nor shall any such institutions advertise or claim the power to issue degrees under the authority of Congress or otherwise than under the authority of the license granted to them by the Education Licensure Commission as hereinbefore provided. *The prohibition in this section contained shall be deemed to include* and is hereby declared applicable to *any individual or individuals, association, or incorporation outside of the District of Columbia which shall undertake to do business in the District of Columbia* or to confer degrees or certificates therein....

(Emphasis added.)

**7.** The Commission's Site Evaluation Team submitted its Site Evaluation Report, which included a recommendation that the Commission license AUD for a term of five years.

## II. Procedural History

On October 10, 2003, one year after the Commission's final hearing renewing AUD's license, AU filed a complaint in Superior Court against the District of Columbia, alleging that the Commission had renewed AUD's license in violation of D.C.Code § 29–618. AU sought a declaratory judgment against the Commission, declaring that it improperly construed D.C.Code § 29–618, and prohibiting AUD from using "American" in its title. AU also sought an injunction requiring the Commission to revoke AUD's license if they failed to change their name. However, AUD was not named as a defendant, nor was AUD notified of the Superior Court action.[8] Following the close of discovery, both AU and the District cross-moved for summary judgment. In their respective motions, AU argued that it was entitled to summary judgment because the Commission's licensure of AUD, as well as other institutions, was in violation of D.C.Code § 29–618, and the District argued that AU lacked standing to bring its claim, and that the Superior Court lacked subject matter jurisdiction to hear the claim.[9] In an April 15, 2005 Order, the trial court, relying solely on the standards of Super. Ct. Civ. R. 56, and not those of the District of Columbia Administrative Procedure Act,[10] granted summary judgment in favor of AU, and held that AUD could not use the name "American" in its title. The order further directed the Commission to revoke AUD's license within 30 days unless AUD changed its name within that 30 day period to comply with D.C.Code § 29–618.[11]

The Commission notified AUD of its intent to comply with the April 15, 2005 trial court Order and revoke AUD's educational license, unless AUD changed its name in compliance with the trial court's order. According to AUD, the communications from the Commission, on April 21, 2005 and April 24, 2005, were the first notices AUD received of AU's Superior Court action seeking the revocation of AUD's license. Up until that point, AUD contends that it was not aware that its license was in jeopardy. Upon learning of the trial court's order, AUD filed a Motion to Inter-

---

**8.** AU argued that it did not need to name AUD as a party to the complaint because AUD's interests were adequately represented by the District of Columbia Education Licensure Commission.

**9.** The trial court correctly concluded that AU had standing to bring its claim. *See Friends of Tilden Park, Inc. v. District of Columbia,* 806 A.2d 1201, 1206–07 (D.C.2002) ("The *sine qua non* of constitutional standing to sue is an actual or imminently threatened injury that is attributable to the defendant and capable of redress by the court.").

**10.** The District of Columbia Administrative Procedure Act ("DCAPA") is codified at D.C.Code § 2–501 *et seq.* (2001).

**11.** The trial court found significant the potential negative consequences of universities such as AUD using the term "American" in their titles and noted:

This case is not specifically about AUD; it is about the diminished reputation AU, as a degree-granting institution in the District, faces when the [Commission] inappropriately applies its governing statutes. As an example, AUD, with its current name, can market itself to students as an American degree-granting institution, based on its licensure in the District and incorporation in Georgia. The name "American" in the title, and the fact that the school is licensed in the District of Columbia, make it appear that the school is sanctioned by the American government, precisely the harm D.C.Code § 29–618 was intended to avoid. Purporting to grant degrees in the District of Columbia directly harms the academic integrity of other degree-granting institutions in the District, including AU. Universities already present in the District were considered when the statute was enacted.

vene in the Superior Court action on May 9, 2005. AUD sought to obtain relief from, and a stay of, the trial court's April 15, 2005 Order. On May 11, 2005, the trial court made an oral ruling denying AUD's motion on three grounds: (1) the April 15th Order was a final decision by the court regarding the Commission's licensure of AUD; (2) the motion was untimely because, upon learning of the Superior Court action, AUD waited eighteen days to file the motion; and (3) AUD's interests had been reasonably and adequately protected by the District with respect to the applicability of D.C.Code § 29–618.

After the trial court denied AUD's Motion to Intervene, the Commission held a special session on May 11, 2005 to consider the actions it would take in regard to the trial court's April 15th Order, and allowed representatives from AUD and AU to address the members of the Commission. At the conclusion of this special session, and in compliance with the trial court's April 15th Order, the Commission revoked AUD's license in Resolution No. L–05–01. The Resolution expressly stated that the ELC "is required to comply with the [April 15th Order]" and as a result, "the license of the American University in Dubai issued on June 11, 1998 and renewed on October 31, 2002, is hereby revoked effective May 16, 2005."

On May 12, 2005, AUD filed a Petition for Review of the revocation order in this court and filed emergency motions to stay the revocation, which was to be effective on May 16, 2005, and to permit it to intervene in the Superior Court action for the purpose of appealing the trial court's April 15, 2005 Order. We issued a stay of both

the trial court's April 15th Order and the Commission's revocation order, and granted AUD's emergency motion to intervene, thereby permitting it to appeal the trial court's April 15th Order in this court. On May 18, 2005, AUD filed a timely Notice of Appeal of the April 15th Order, and this court consolidated that appeal, No. 05–CV–643, with AUD's Petition for Review of the Commission's revocation order, No. 05–AA–458.[12] On June 23, 2005, the Commission issued Resolution No. L–05–02, extending the term of AUD's license through the conclusion of the proceeding in this court or "until such time as otherwise directed by the Court, at which time the Commission will take action with regard to the license in accordance with the essential requirements of the law."

This is a consolidated appeal which involves both AUD's appeal of the trial court's April 15, 2005 Order directing the Education Licensure Commission to revoke AUD's license within 30 days, and AUD's petition for review of the Commission's revocation of AUD's license pursuant to the trial court's April 15, 2005 Order.[13]

### III. Analysis

**1. The Superior Court Had Jurisdiction to Review the Commission's Decision to Renew the License of AUD.**

Initially, we address AUD's argument that the Superior Court lacked jurisdiction to hear and grant AU's complaint for a declaratory judgment, in which AU challenged the Commission's renewal of AUD's license. AUD contends that AU's Superior Court lawsuit was actually a petition for

12. The parties conceded at oral argument that, as a practical matter, our decision to grant AUD's emergency motion to intervene (No. 05–CV–643) effectively moots appeal No. 05–CV–459, in which AUD appealed from the

denial of its motion to intervene filed in the trial court.

13. Appeal Nos. 05–CV–643 and 05–AA–458 respectively.

review of the Commission's decision to renew AUD's license and not a "broader challenge to the arbitrary and capricious conduct of the [Commission] in performing the legislative tasks of interpreting and applying D.C.Code § 29–618," as AU contends in its brief. AUD further contends that because AU's complaint was essentially a direct challenge to the Commission's licensure of AUD, this court had exclusive jurisdiction to hear the matter because the Commission's renewal was a "contested case" within the meaning of the DCAPA. In our view, the Superior Court was the proper forum to hear AU's complaint, which we view, as did the trial court, as a complaint for declaratory and injunctive relief to enforce a statutory requirement (and not a petition for review of a particular agency order) under the court's general equitable powers to hear "any civil action or other matter at law or at equity brought in the District of Columbia." *See* D.C.Code §§ 1–204.31, 11–921 (2001).

■ However, assuming *arguendo* that AU's complaint fell within the purview of the DCAPA, we note that the Superior Court was the proper forum because, as discussed *infra*, challenges made to an agency decision in non-contested cases (here, a license renewal) are properly within the jurisdiction of, and directly reviewable by, the Superior Court, unless otherwise provided by applicable statute or law. *See United States v. D.C. Bd. of Zoning Adjustment*, 644 A.2d 995, 999 n. 9 (D.C. 1994) ("Where a party is not entitled to

direct appellate review [by the court of appeals] of an agency's decision, an action for redress may be had in the Superior Court."); *see also Jones & Artis Constr. Co. v. D.C. Contract Appeals Bd.*, 549 A.2d 315 (D.C.1988) (concluding that because a bid protest is not a contested case, a bidder seeking relief from a decision on a bid protest by the Contract Appeals Board must resort in the first instance to the Superior Court).[14]

D.C.Code § 29–617 (2001) makes clear that the DCAPA does not provide for review by this court of a license *renewal*. Instead, D.C.Code § 29–617 provides that "any party aggrieved by the action of said commission in *refusing to license or in revoking a license previously granted* may appeal as provided in the District of Columbia Administrative Procedure Act ..." to this court. (Emphasis added.) By the plain language of the statute, only those parties aggrieved by a refusal or revocation of a license by the Commission may seek judicial review in this court, pursuant to the DCAPA. *See* D.C.Code § 29–617.[15]

■ In light of D.C.Code § 29–617, and based upon our review of the record and our consideration of the agency's implicit interpretation of 16 DCMR § 2116 (1998) as affording a right to a hearing only in the case of a revocation or refusal to license, this court lacks jurisdiction to directly review a *renewal* decision of the Commission under the DCAPA's judicial review provision, D.C.Code § 2–510.[16]

---

**14.** If it were a contested case and properly reviewable by this court, it would not have been timely filed. *See* D.C. Ct.App. R. 15(a)(2) ("[A] ... petition for review must be filed within 30 days after notice is given, in conformance with the rules or regulations of the agency, of the order or decision sought to be reviewed.").

**15.** For this reason, the instant appeal by AUD of the Commission's revocation order, appeal

No. 05–AA–458, which is discussed *infra*, is properly before this court. *See* D.C.Code §§ 2–510(a), 29–617.

**16.** D.C.Code § 2–510(a) expressly limits jurisdiction of this court with respect to review of agency decisions and provides, in pertinent part: "Any person suffering a legal wrong, or adversely affected or aggrieved, *by an order or decision of ... an agency in a contested case*, is entitled to a judicial review thereof in ac-

Further, where a license has been granted or reinstated, there is no constitutional right to a hearing, as there has been no deprivation of a property right. *Cf. District of Columbia v. Douglass*, 452 A.2d 329, 332 (D.C.1982) (a party is entitled to a hearing before denial of a property right in a license may be revoked); *see also Woods v. D.C. Nurses' Examining Bd.*, 436 A.2d 369, 372 (D.C.1981). Therefore, as there is no statutory or constitutional entitlement to a trial-type hearing in this context, we have no contested case jurisdiction under the DCAPA. *See* D.C.Code § 2–502(8) (2001) (defining a "contested case" to mean "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law . . . or by constitutional right, to be determined after a hearing before the Mayor or before an agency. . . .").

■ The October 31, 2002 proceeding before the Commission, which resulted in a *renewal* of AUD's license, was not a "contested case" within the meaning of the DCAPA. In reviewing the record *de novo* on appeal,[17] we conclude that all of the Commission's decisions to grant or renew AUD's license took place at regularly scheduled monthly public meetings, which were legislative in nature and were not trial-type adjudications. *Cf. Jones v. D.C. Alcoholic Beverage Control Bd.*, 621 A.2d 385, 386 (D.C.1993) (a contested case hearing "must be adjudicatory as opposed to legislative in nature.") (quoting *W.C. & A.N. Miller Dev. Co. v. D.C. Zoning Comm'n*, 340 A.2d 420, 422 (D.C.1975) (en banc)).[18] We disagree with AUD's argument that its application for license renewal constituted a contested case, and therefore, that AU was required to file a petition for review in this court pursuant to the DCAPA. The October 31, 2002 Commission proceeding renewing AUD's license was not a contested case over which this court had exclusive jurisdiction to review, pursuant to the DCAPA. The Superior Court, not this court, had jurisdiction to hear AU's complaint.

## 2. The Trial Court Committed Reversible Error by Failing to Join AUD as an Indispensable Party in the Superior Court Action.

■ AUD was not joined in AU's Superior Court action that sought to revoke AUD's educational license, and which resulted in an order from the trial court directing the Commission to revoke AUD's license. The trial court's failure to join AUD as a party under Super. Ct. Civ. R.

cordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review." (Emphasis added.)

17. The issue of subject matter jurisdiction is a question of law. Therefore, our standard of review is *de novo*. *See Technical Land, Inc. v. Firemen's Ins. Co.*, 756 A.2d 439, 443 (D.C. 2000); *United States v. Felder*, 548 A.2d 57, 61 (D.C.1988).

18. In this case, the relevant municipal regulations provide that an applicant or licensee *may request* a hearing and upon receiving a request, the Commission "shall within thirty (30) days following receipt of the request, notify the respondent of the date, time, and place of the hearing." *See* 16 DCMR § 2116.7. AU contends, and we agree, that this discretionary hearing afforded by the municipal regulation did not provide for a "trial type hearing." In opposing the renewal of AUD's license, AU was not permitted to present evidence at the public proceedings, nor was it permitted to call witnesses, to cross-examine witnesses, or to provide testimony under oath. In fact, the Commission implicitly acknowledges that a trial-type contested case hearing is not required for a license renewal proceeding. Although the regulation provides that a hearing shall be held at the request of the applicant or licensee, nowhere in the governing statute, D.C.Code § 29–617, is a trial type hearing required if a license is renewed.

19 [19] was an abuse of discretion. *See District Cablevision Ltd. P'ship. v. McLean Gardens Condo. Unit Owners' Ass'n,* 621 A.2d 815, 816 (D.C.1993); *Johnson v. United States,* 398 . A.2d 354, 363 (D.C. 1979). To the extent that this was a discretionary decision, we also conclude that it was based on an error of law, for it did not recognize AUD's right to notice and an opportunity to be heard, which Sup.Ct. Civ. R. 19 is designed in no small part to protect. *See, e.g., Giles v. Crawford Edgewood Trenton Terrace,* 911 A.2d 1223, 1225 (D.C.2006) ("[A] trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . .") (internal quotation marks and citation omitted); *see also Whitaker v. United States,* 617 A.2d 499, 504 (D.C.1992) ("Judicial discretion must be founded upon correct legal principles, and an exercise of discretion based on an incorrect legal standard cannot stand.") (citing *In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991)).

■ We held in *Flack v. Laster,* 417 A.2d 393, 399 (D.C.1980), that "[i]f a party is indispensable, the action must be dismissed unless the party is joined." A party is indispensable when "he has an interest in the proceeding . . . and a final decree cannot be made in the party's absence without having an injurious effect on that interest; when the court cannot do complete and final justice without affecting the party's interest; or when the final determination of the controversy in the party's absence will be inconsistent with equity and good conscience." *Id.* at 399–400. Although AUD stood to lose its license as a result of AU's action in the Superior Court, it was not joined as a party to the suit, or notified of the action.[20] It simply cannot be said that AUD did not have an "interest" in the trial court proceedings, where its educational license was at stake. To the contrary, AUD was an indispensable party and the purpose of Super. Ct. Civ. R. 19 is to protect absent parties who may be harmed by their exclusion from the litigation. *See Flack, supra,* 417 A.2d at 399–400. AUD's right to retain its license was at the center of the Superior Court dispute and the very reason why AU filed a complaint in the Superior Court seeking declaratory and injunctive relief.

19. Super. Ct. Civ. R. 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the Court shall order that the person be made a party.

20. AU argued in its brief that a licensee is not an indispensable party to a claim brought against a D.C. agency under the DCAPA. *See Francis v. Recycling Solutions, Inc.,* 695 A.2d 63 (D.C.1997). We disagree. In *Recycling Solutions, Inc.,* the court held that a bidder was not the proper defendant because it could not provide the relief requested, when the complaint challenged an agency's authority to issue an order. Rather the agency was the proper defendant, but it was not made a party to the action. This case is distinguishable because here, the District was a party to the suit and AUD sought to intervene to protect its property rights, but was denied such intervention. That the Commission is the proper respondent in AU's action challenging its order under Super. Ct. Civ. Agency Rev. R. 1(d) does not negate that AUD is also an indispensable party to that action under Super. Ct. Civ. R. 19.

The fact that neither party to the Superior Court action raised the issue of AUD's participation does not alter our holding, given the explicit language of Super. Ct. Civ. R. 19(a), that if an indispensable person has not been joined, "the Court shall order that the person be made a party." The trial court had a duty to act *sua sponte* and cause AUD to be joined to the suit. *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 21 (D.C.1991) (interpreting Rule 19 to require a trial judge to order joinder whenever possible). AUD was not a party to the proceeding or served with process, therefore, it had no opportunity to assert its right to participate in the Superior Court action in a timely manner. Moreover, the Supreme Court has held that, when necessary, the court should take steps on its own initiative to protect the absent party, who otherwise would have no opportunity to plead and prove its interest in the lawsuit. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

**3. AUD was Denied its Right to Proper Notice Before the Commission Revoked its License.**

■ Lastly, we agree with AUD that it was denied proper notice when the Commission, acting on the trial court's April 15, 2005 Order, revoked AUD's license without the required 30 days notice. The Commission failed to provide AUD with the 30 days notice set out in D.C.Code § 29–617, which outlines the procedures that must be followed by the Commission when a license has been refused or revoked, and provides that upon the refusal or revocation of a license, "30 days notice *shall* first have been given to such individual or individuals ... with full opportunity to be heard by [the Commission] at either

a public or nonpublic session...." D.C.Code § 29–617 (emphasis added). However, only *twenty* days after AUD received notification of the trial court's order from the Commission on April 21, 2005 and again on April 24, 2005, the Commission, on May 11, 2005, ordered that AUD's license be revoked effective May 16, 2005. The Commission failed to provide AUD with the full 30 days notice to which it was entitled before its license was revoked.

■ Normally, we will affirm the Commission's decision unless that decision is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." D.C.Code § 2–501(a)(3)(A) (2001). "[A]lthough we accord weight to the agency's construction of the statutes which it administers, the ultimate responsibility for deciding questions of law is assigned to this court." *George Washington Univ. v. D.C. Bd. of Adjustment*, 831 A.2d 921, 931 (D.C.2003) (citing *Harris v. D.C. Office of Worker's Comp.*, 660 A.2d 404, 407 (D.C.1995)). The question of whether AUD's license could be taken away without notice or an opportunity to be heard is one of law, which we review *de novo*. *See Harris, supra*, 660 A.2d at 407 ("Our review of [an] agency's legal rulings is *de novo* ....").

**IV. Conclusion**

The Superior Court had jurisdiction to hear AU's challenge to the Commission's renewal order. However, the trial court should have joined AUD as an indispensable party in the Superior Court action which sought revocation of AUD's license, and the failure to join AUD resulted in reversible error. Further, the Commission acted in violation of AUD's rights when it implemented the trial court's order and revoked AUD's license without giving

AUD the required notice.[21]

Accordingly, we vacate the trial court's April 15, 2005 Order and the Commission's May 11, 2005 Order revoking AUD's license, which was predicated on the trial court's order, and we remand the case to the Superior Court with directions to dismiss the action for failure to join AUD as an indispensable party.

*So ordered.*

---

**21.** At this juncture, we need not address the merits of the issue of whether AUD was in violation of D.C.Code § 29–618 for using and refusing to remove the word "American" from its name.